## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JENNIFER ALEXA, BRANDON
BOGGS, JEFF MALONE, TIM RUGG,                Case No.

      Plaintiffs,                                Hon.

v.

CITY OF ANN ARBOR,

      Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St., Suite125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs Jennifer Alexa, Brandon Boggs, Jeff Malone, and Tim Rugg ("Plaintiffs"), by and through the undersigned attorneys, and state the following:

## INTRODUCTION

1. The City of Ann Arbor ("Defendant") deliberately flouted Plaintiffs' Constitutional Rights, Title VII of the Civil Rights Act of 1964 ("Title VII") and

1

Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") by blanketly denying religious exemptions from its mandatory COVID-19 policy based on a purported "insincerity" of its employees' religious beliefs.  Defendant's vaccine mandate infringes on Plaintiffs' fundamental right under the Michigan Constitution to "bodily integrity," as guaranteed by the privacy interests within the Due Process Clause of the Michigan Constitution, Const. 1963, art 1, §17, and recently recognized by the State of Michigan Court of Claims in *Planned Parenthood of Michigan, et al v Attorney General of the State of Michigan, et al*, Case No. 22-000044, Opinion and Order Denying Motion for Stay of Proceedings (Sept. 7, 2022).  In that recent opinion, Judge Elizabeth L. Gleicher held that:

> the right to bodily integrity emphasizes one's exclusive use and control of one's own body. "No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac R Co v Botsford*, 141 US 250, 251; 11 S Ct 1000; 3 5 L Ed 734 ( 1891 ).  The right is "indispensable," declared the Sixth Circuit in *Guertin v Michigan*, 912 F3d 907, 918 (CA 6, 2019), the "first among equals."  These recognitions of the primacy of the right correspond with a universal understanding that bodily autonomy is inherent to human dignity.

## PARTIES, JURISDICTION, AND VENUE

2.     Jennifer Alexa resides in Ann Arbor, Michigan.

3.     Brandon Boggs resides in Milan, Michigan.

4.     Jeff Malone resides in Dearborn, Michigan.

5.     Tim Rugg resides in Highland, Michigan.

6.     Defendant City of Ann Arbor is a municipality in Michigan.

7.     The Eastern District of Michigan has jurisdiction over the Title VII of the Civil Rights Act of 1964 ("Title VII") claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Elliott-Larsen Civil Rights Act ("ELCRA") claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which Defendant is located.

9.     Plaintiffs have each submitted Charges of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and Plaintiff Alexa, Plaintiff Boggs and Plaintiff Malone have received right to sue letters in the last 90 days. Plaintiff Rugg has not received a right to sue letter from the EEOC at this time, but his Title VII claims are properly brought to this Court pursuant to Title VII's single filing (or "piggybacking") rule.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

10.     On August 26, 2021, Defendant sent an email to all staff to announce its COVID-19 vaccine mandate.

11.     The mandate required that all employees must be fully vaccinated

against COVID-19 by October 8, 2021.

12.    Defendant stated that it would "grant reasonable medical and religious exemptions for those who cannot receive a vaccine," and provided exemption forms.

13.    On October 13, 2021, Defendant announced an update regarding its COVID-19 vaccine mandate.

14.    In this update, Defendant announced that they were going to push the implementation date of the vaccine mandate back to November 19, 2021.

15.    Defendant asserted that employees had to submit their exemption request by November 1, 2021 to "guarantee review before the November 19th deadline."

### Plaintiff's Religious Accommodation Requests

16.    Plaintiffs each have sincerely held religious beliefs that preclude them from receiving the COVID-19 vaccine.

17.    Plaintiff Alexa commenced her employment with the City on August 13, 2012.

18.    On August 27, 2021, Plaintiff Alexa submitted her religious exemption request.

19.    Plaintiff Alexa filled out the requisite sections of the provided religious exemption request form and attached an additional letter expressing her sincerely held beliefs, stating, in pertinent part:

> Know ye not that ye are the temple of God, and that the Spirit of God dwelleth in you? If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are. What? know ye not that your body is the temple of the Holy Ghost, which is in you, which ye have of God, and ye are not your own? 1 Corinthians 3:16-17, 6:19 (KJV). I believe, pursuant to my Christian faith, that my body is a temple of the Holy Spirit. It is a God-given responsibility and requirement for me to protect the physical integrity of my body against unclean food and injections. The broad prohibition against consuming anything that might "defile" the body, and hence the conscience, is stated again in 1 Corinthians 8:7…Again, in 2 Corinthians 7:1, there is this admonition against defiling the flesh and the spirit…Thus, my faith prohibits me from being vaccinated as proposed…I make this request for the glory of God and consistent with my faith.

20.   On September 16, 2021, Defendant interrogated Plaintiff Alexa about her sincerely held religious beliefs.

21.   Defendant failed to provide Plaintiff Alexa the questions in the interview upon request.

22.   Defendant asserts that because Plaintiff Alexa's accommodation request was not in her own words, her beliefs were not sincerely held.

23.   Plaintiff Alexa was terminated effective December 20, 2021.

24.   Plaintiff Boggs worked in an exemplary fashion for Defendant for 10 years.

25.   Plaintiff Boggs expressed interest in submitting a religious exemption request.

26.     After Plaintiff Boggs expressed this interest, he was explicitly told by Defendant that merely stating, "being Christian, Catholic, or Baptist" wasn't acceptable, that the religion must "truly believe" in not vaccinating, and that he would not be accommodated.

27.     After Defendant asserted that Plaintiff Boggs would not be accommodated, he decided not to submit a religious exemption request, as it would be futile.

28.     On December 20, 2021, Plaintiff Boggs resigned his position because his sincerely held religious beliefs precluded him from being vaccinated and Defendant deterred him from submitting a religious accommodation request.

29.     Plaintiff Malone was employed by Defendant for roughly one year.

30.     On October 27, 2021, Plaintiff Malone submitted a religious accommodation request to Defendant, which explicated how his sincerely held religious beliefs preclude him from receiving the COVID-19 vaccination.

31.     On October 29, 2021, Defendant denied Plaintiff Malone's request and expressed doubt of his sincerity because his letter was not in his own words.

32.     Defendant threatened to fire Plaintiff Malone, so he reluctantly resigned under duress on December 19, 2021.

33.     On November 5, 2019, Plaintiff Rugg did a radio interview on WAAM 1600, "On the Edge with Thayrone."

6

34.     During this interview, Plaintiff Rugg discussed Defendant's diversity, equity, and inclusion training he participated in that day.

35.     Following the interview, Defendant's Fire Chief Mike Kennedy investigated and attempted to discipline Plaintiff Rugg.

36.     On April 30, 2020, Plaintiff Rugg protested the COVID-19 stay-at-home policy at a rally in Lansing, Michigan.

37.     At least two news stories about the rally quoted Plaintiff Rugg.

38.     Fire Chief Kennedy disciplined Plaintiff Rugg with threat of termination for not obeying the stay-at-home order.

39.     Plaintiff Rugg submitted a religious accommodation request for Defendant's mandate.

40.     Defendant denied Plaintiff Rugg's request, asserting that he was not being sincere.

41.     Defendant placed Plaintiff Rugg on a 30-day unpaid leave, then terminated him on December 22, 2021.

42.     Plaintiffs all worked safely and successfully for Defendant prior to the vaccine mandate.

43.     There are a host of reasonable accommodations that Defendant failed to consider.

44.     Plaintiffs could have tested daily to confirm whether they were not ill.

45.    Plaintiff Rugg could have continued to participate in Defendant's system of daily confirmation of health.

46.    Plaintiffs could have continued to engage in frequent sanitizing and disinfecting.

47.    Plaintiffs could have worn gloves and respirators in the workplace.

48.    Plaintiff Alexa, Plaintiff Boggs and Plaintiff Malone could have continued to work remotely, as they had during the onset of the pandemic.

49.    Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the opportunity to telework. U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

50.    "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*.

51.    Defendant asserted that Plaintiff Alexa, Plaintiff Malone, and Plaintiff Rugg were insincere in their beliefs because they utilized internet resources to complete their exemption requests.

52.    Defendant asserted to Plaintiff Boggs that submitting a religious accommodation request would be futile.

53.     Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965). Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

54.     Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986). "Bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.*

55.     Defendant's accommodation process was arbitrary.

56.     Defendant did not explore available reasonable accommodations from the vaccine.

## Defendant Cannot Establish Undue Hardship

57.     The prohibition against religious discrimination imposes a "duty" on employers to accommodate sincere religious beliefs, absent "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

58.     The employer, not the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc*., 571 F.2d 338, 341 (6th Cir.1978).

59.     An employer does not satisfy its burden of proving undue hardship

"merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975). The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

60.     Defendant cannot satisfy its burden of proving undue hardship.

61.     Defendant's allegations are based in religious animus rather than science.

62.     Plaintiffs were not requesting a license to roam about uninhibited without sanitizing or wearing any personal protective equipment ("PPE"), as though no health threat existed.

63.     Plaintiffs were more than willing to comply with all safety protocols.

**COUNT I**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.**
**RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE**
**ON BEHALF OF PLAINTIFFS**

64.     Plaintiffs restate the foregoing paragraphs as set forth fully herein.

65.     Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

66.     Plaintiffs can establish *prima facie* cases of discrimination by showing (1) they hold sincere religious beliefs that conflict with an employment requirement;

(2) they informed their employer of same; and (3) they were disciplined for failing to comply with the employment requirement." *Yeager v. FirstEnergy Generation Corp*, 777 F.3d 362, 363 (6th Cir. 2015).

67.     Plaintiffs hold sincere religious beliefs that conflict with the vaccine mandate.

68.     Plaintiffs informed their employer of same.

69.     Plaintiffs were disciplined for failing to comply with the vaccine mandate.

70.     Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).  Defendant has thereby violated the law.

71.     Multiple reasonable accommodations could have been offered without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and testing.

72.     Defendant never explained why no accommodations could have worked.

73.     Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and they will so suffer in the future.

74.     Plaintiffs have been denied employment and placed in financial distress

and they have suffered a loss of earnings and benefits, loss of health insurance coverage, and a loss of and impairment of their earning capacity and ability to work because of the denial of their request.

75.    Plaintiffs have been required to employ the services of an attorney as a result.

76.    Defendant's actions were intentional and/or reckless.

**COUNT II**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.**
**RELIGIOUS DISCRIMINATION–RETALIATION**
**<u>ON BEHALF OF PLAINTIFFS</u>**

77.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

78.    It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

79.    Plaintiffs engaged in protected activity when they requested accommodations.

80.    Defendant retaliated against them by threatening unpaid suspension and termination.

81.    Defendant's threat of unpaid suspension was clearly intended to force employees to abandon their religious beliefs and receive the vaccine.

82.    Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical

12

effects associated therewith because of the unlawful retaliatory conduct, and they will so suffer in the future.

83.    Plaintiffs have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the retaliatory conduct, and they will so suffer in the future.

84.    Plaintiffs have been required to employ the services of an attorney as a result.

85.    Defendant's actions were intentional and/or reckless.

## COUNT III
## VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA") RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE ON BEHALF OF ALL PLAINTIFFS

86.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

87.    Plaintiffs hold sincere religious beliefs that conflict with the vaccine mandate.

88.    Plaintiffs informed their employer of same.

89.    Plaintiffs were disciplined for failing to comply with the vaccine mandate.

90.    Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it granted a false "accommodation" of an unpaid leave of absence, which is not an accommodation at

all. Defendant therefore violated the law.

91. Multiple reasonable accommodations could have been offered without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and testing.

92. Defendant never explained why no accommodations could have worked.

93. Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and they will so suffer in the future.

94. Plaintiffs have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, loss of health insurance coverage, and a loss of and impairment of their earning capacity and ability to work because of the denial of their request.

95. Plaintiffs have been required to employ the services of an attorney as a result.

96. Defendant's actions were intentional and/or reckless.

**COUNT IV**
**VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**RELIGIOUS DISCRIMINATION–RETALIATION**
**ON BEHALF OF ALL PLAINTIFFS**

97. Plaintiffs restate the foregoing paragraphs as set forth fully herein.

98.   It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

99.   Plaintiffs engaged in protected activity when they requested accommodations.

100.   Defendant retaliated against them by threatening unpaid suspension and termination.

101.   Defendant's denial of accommodations and encouragement to receive the vaccination regardless of Plaintiffs' religious beliefs was clearly intended to force employees to abandon their religious beliefs and receive the vaccine.

102.   Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct, and they will so suffer in the future.

103.   Plaintiffs have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the retaliatory conduct, and they will so suffer in the future.

104.   Plaintiffs have been required to employ the services of an attorney a result.

105.   Defendant's actions were intentional and/or reckless.

**COUNT V**
**VIOLATION OF MICHIGAN CONSTITUTION**
**DUE PROCESS – LIBERTY AND BODILY INTEGRITY**
**ON BEHALF OF ALL PLAINTIFFS**

106.   Plaintiffs restate the foregoing paragraphs as set forth fully herein.

107.   The Michigan Due Process Clause protects the right to bodily integrity.

108.   The right to bodily integrity underpins the common-law doctrine of informed consent in medical decision-making.

109.   Defendant's vaccine mandate infringes the right to bodily integrity by forcing people to receive injection containing an experimental, emergency vaccine without consent.

110.   Defendant's vaccine mandate infringes on a fundamental right and is therefore subject to strict scrutiny.

111.   Defendant's vaccine mandate advances no compelling government interest.

112.   Even assuming such an interest, the vaccine mandate is not narrowly tailored to serve it, and therefore is unconstitutional.

**COUNT VI**
**VIOLATION OF MICHIGAN CONSTITUTION**
**RETAINED RIGHTS – LIBERTY AND PRIVACY**
**ON BEHALF OF ALL PLAINTIFFS**

113.   Plaintiffs restate the foregoing paragraphs as set forth fully herein.

16

114.   By mandating that Plaintiffs take an experimental, emergency vaccine, Defendant's vaccine mandate violates the liberty and privacy rights of Plaintiffs, as guaranteed by the Retained Rights Clause of the 1963 Michigan Constitution, art 1, Section 23.

115.   The right to bodily integrity underpins the common-law doctrine of informed consent in medical decision-making.

116.   Michigan's constitutional rights to privacy and individual liberty encompass a person's right to make decisions about whether to be vaccinated.

117.   Defendant's vaccine mandate infringes on a fundamental right and is therefore subject to strict scrutiny.

118.   Defendant's vaccine mandate advances no compelling government interest.

119.   Even assuming such an interest, the vaccine mandate is not narrowly tailored to serve it, and therefore is unconstitutional.

**COUNT VII**
**42 USC § 1983**
**First Amendment Retaliation**
**<u>On Behalf of Plaintiff Rugg</u>**

120.   Plaintiff Rugg incorporates by reference the foregoing paragraphs as if fully set forth herein.

121.   The First Amendment of the United States Constitution, as incorporated into the 14th Amendment, prevents governments from abridging an individual's

freedom of speech.

122.   The First Amendment also protects an individual from retaliation when he has exercised his freedom of speech.

123.   The rationale for protecting a public employee's right to comment on matters of public concern is that "public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public." *City of San Diego, v. Roe*, 543 U.S. 77, 82, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004).

124.   An employee speaking as a citizen is speaking on a matter of public concern when that speech can be fairly considered as relating to any matter of political, social, or other concern to the community. Another consideration is whether the speech involves a subject of general interest and of value and concern to the public. *Mosholder v. Barnhardt*, 679 F.3d 443, 449 (6th Cir. 2012).

125.   Speech entails a matter of public concern when the speech involves issues for which information is needed to enable members of society to make informed decisions regarding their government's operation. *Banks v. Wolfe Co. Bd. of Ed.*, 330 F.3d 888, 892 (6th Cir. 2003).

126.   "Public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication."  Id. at 83-84.

127.   "When a public employee speaks on a matter that is merely related to the employee's profession, he or she is a member of the community most likely to have an informed and definite opinion and must be permitted to speak freely absent fear of retaliation." *Garvin v. Detroit Bd. of Educ.*, No. 298838, 2013 WL 951118, at *11 (Mich. Ct. App. Feb. 26, 2013), citing *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

128.   Plaintiff Rugg's speech was made as a citizen on a matter of public concern.

129.   Bringing to light potential or actual wrongdoings or a breach of the public trust are generally matters of public concern. *Connick v. Myers*, 461 U.S. 138, 148, 103 S. Ct. 1684, 1691, 75 L. Ed. 2d 708 (1983).  Moreover, "discipline and morale in the workplace are related to an agency's efficient performance of its duties[.]" *Id.*

130.   Defendants punished Plaintiff Rugg for raising matters of public concern.

131.   Defendant's decision to punish Plaintiff Rugg was motivated, at least in part, by Plaintiff's exercise of his First Amendment right to free speech.

132.   Plaintiff Rugg's speech had no impact on the efficiency of Defendant, and therefore Defendants had no interest in curtailing this speech to promote the efficiency of the public services they performed through their employees.

133.   Defendants acted with deliberate indifference to Plaintiff Rugg's presumed and actual innocence.

134.   It would have been plainly obvious to a reasonable official that such actions or inaction would deprive or lead to the deprivation of Plaintiff Rugg's constitutional rights.

135.   Defendants' actions and inaction, as set forth above, were fundamentally unfair to Plaintiff Rugg.

136.   There exists no rational relationship between Plaintiff Rugg's actual conduct and the discipline imposed against him by Defendants.

137.   As a direct and proximate result of Defendants' retaliation, Plaintiff Rugg has suffered emotional and physical distress, feelings of depression, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

138.   As a further and direct proximate result of Defendants' retaliation, Plaintiff Rugg has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

a.      Compensatory damages for monetary and non-monetary loss;

20

b.      Exemplary and punitive damages;

c.      Prejudgment interest;

d.      Reasonable attorney's fees; and

e.      Such other relief as in law or equity may pertain.

                              Respectfully Submitted,
                              HURWITZ LAW, PLLC

                              */s/ Noah S. Hurwitz*
                              Noah Hurwitz (P74063)
                              Attorney for Plaintiff
                              340 Beakes St., Suite 125
                              Ann Arbor, MI 48103
                              (844) 487-9489
Dated: December 19, 2022      noah@hurwitzlaw.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JENNIFER ALEXA, BRANDON
BOGGS, JEFF MALONE, TIM RUGG

     Plaintiffs,

v.

CITY OF ANN ARBOR,

     Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

Plaintiffs Jennifer Alexa, Brandon Boggs, Jeff Malone, and Tim Rugg ("Plaintiffs"), by and through their attorneys Hurwitz Law, PLLC, hereby demand a trial by jury, for all issues so triable.

Respectfully Submitted,
HURWITZ LAW, PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)

22

Attorney for Plaintiff

Dated: December 19, 2022