UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER ALEXA, JEFF MALONE,
and TIM RUGG,

       Plaintiffs,

v.

       Case No. 22-cv-13073
       Honorable Linda V. Parker

CITY OF ANN ARBOR,

       Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL

Plaintiffs Jennifer Alexa, Jeff Malone, and Tim Rugg (collectively "Plaintiffs") filed this lawsuit against the City of Ann Arbor (hereafter "Defendant"), alleging that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") when denying Plaintiffs' religious accommodations for Defendant's COVID-19 vaccine mandate. (ECF No. 1.) The matter is presently before the Court on Plaintiffs' motion to disqualify Matthew Thomas as Defendant's counsel. (ECF No. 60.) The motion has been fully briefed. (ECF Nos. 68, 72.) Relying on Michigan Rule of Professional Conduct 3.7, Plaintiffs argue that Thomas' position as a member of Defendant's "accommodation team" makes him a *necessary* witness to the present litigation and precludes him from serving as counsel. (ECF

1

No. 1 at PageID.1653.) For the reasons set forth below, the Court is denying the motion.

I.     **Factual & Procedural Background**

Plaintiffs were employees of Defendant during the COVID-19 Pandemic. (*See generally* ECF No. 1.) Following the development of the COVID-19 vaccine, Defendant implemented a vaccine mandate for all city employees and communicated this mandate via email on August 26, 2021. (*Id.* at PageID.3 ¶ 11.) The mandate required all city employees to be fully vaccinated against COVID-19 by October 8, 2021. (*Id.* at PageID.4 ¶ 11.) This deadline was then later extended to November 19, 2021. (*Id.* at PageID.4 ¶ 14.)

Alternatively, Defendant stated that it would "grant reasonable medical and religious exemptions" for any employees that submitted a valid exemption form. (*Id.* at PageID.4 ¶ 12.) Plaintiffs submitted exemption forms and personal statements requesting religious accommodation. (*See generally id.*) Defendant denied Plaintiffs' religious exemptions and later released Plaintiffs from employment after they failed to adhere to the vaccine mandate. (*See generally id.*)

Exemption forms were reviewed and granted by Defendant's "accommodation team." The accommodation team consisted of Benefits Supervisor Jessica Hull, Benefits and Wellness Specialist Kimberly Barry, Deputy City Attorney Margaret Radabaugh, and City Attorney Matthew Thomas. (ECF

2

No. 60-4 at PageID.1915.)  After an exemption request was submitted, it was reviewed, and Hull and Barry conducted interviews when needed to garner further information about the employee's request.  (ECF No. 60-3 at PageID.1750.)  Following the interviews, the entire team met to discuss each employee's exemption request, and exemptions were granted based on the Equal Employment Opportunity Commission's guidance to assess an individual's "credibility" and "sincerity."  (ECF No. 60-3 at PageID.1728.)

During her deposition in this matter, Radabaugh testified that she and Thomas worked in a legal capacity during these meetings, offering only their guidance and opinions on the legality of the exemption requests.  (ECF No. 60-3 at PageID.1750.)  Hull and Barry then used the attorneys' guidance to accept or deny the requests, and final termination notices were given separately from the accommodation team.  (ECF No. 60-3 at PageID.1715.)  Radabaugh testified that approximately 62% of religious accommodations were accepted and granted during this process.  (ECF No. 60-3 at PageID.1751.)

As a result of Defendant's denial of their religious exemption requests and subsequent termination of their employment, Plaintiffs filed this lawsuit against Defendant on December 12, 2022.  (ECF No. 1.)  On January 17, 2023, Thomas and other in-house attorneys for Defendant entered their appearances in the litigation.  (ECF Nos. 3-5.)

Plaintiffs now move to disqualify Thomas as counsel for Defendant given his role on the accommodation team. (ECF No. 60.) Relying on Michigan Court Rule 3.7, Plaintiffs argue that Thomas' role makes him a *necessary* witness to the litigation and risks "blurring the line between an attorney's role as advocate and as a witness with personal knowledge, impairing the fact-finding process." (ECF No. 60 at PageID.1654 (citing *Wyndham Vacation Ownership, Inc.,* No, 3:18-cv-01399, 2020 WL 134132, at *3).) Furthermore, Plaintiffs believe that Thomas' continued involvement allows Defendant to protect vital evidence through the declaration of attorney-client privilege during the discovery and trial phases. (ECF No. 60.) Defendant argues in response that this maneuver is an attempt to prolong litigation and that Plaintiffs fail to support their motion with any legal basis as to the necessity of Thomas' role as a witness. (ECF. No. 68.)

## II.    Applicable Law

Under Michigan Rule of Professional Conduct 3.7(a), an attorney who is "likely to be a *necessary* witness" is precluded from serving as an advocate at trial unless the attorney's "testimony relates to an uncontested issue" or "the nature and value of legal services rendered in the case[,]" or the attorney's disqualification would pose "a substantial hardship on the client." MRPC 3.7(a) (emphasis added). If the opposing party can prove that an attorney is a *necessary* witness and none of the above exceptions apply, the attorney's role during the litigation process, which

"combin[es] roles of advocate and witness," "can prejudice the opposing party and can involve a conflict of interest between the lawyer and the client." Comment to MRPC 3.7. Therefore, the opposing party can move for the attorney's disqualification.

However, courts have long been hesitant to approve motions to disqualify counsel. Upending counsel can undermine a client's right to choose counsel freely, create additional hardships for the client, and prolong the litigation process, thus thwarting judicial efficiency. *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222 (6th Cir. 1988). In fact, "[m]otions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.*, 327 B.R. 322, 337 (B.A.P. 6th Cir. 1999). The party seeking disqualification bears a high burden of proof. *Id*.

Furthermore, the Sixth Circuit has adopted "the *Shelton* rule," which outlines when information can be gathered from opposing counsel during discovery and trial. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628-29 (6th Cir. 2002) (citing *Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986)). Under the *Shelton* rule, "[d]iscovery from an opposing counsel is 'limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information; (2) the information sought is relevant

5

and nonprivileged; and (3) the information is crucial to the preparation of the case.'" *Id*. at 628 (quoting *Shelton*, 805 F.2d at 1327) (ellipsis removed). Nonprivileged information applies to all relevant facts and evidence and excludes any communication or advice protected under attorney-client privilege. *Upjohn Co. v. United States*, 499 U.S. 383, 395 (1981). The Sixth Circuit has articulated that, unless waived, attorney-client privilege extends only to communications made in confidence between a legal advisor, in his or her professional capacity, and a client when "advice of any kind is sought." *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992). During the litigation process, the party asserting the privilege bears the burden of proof with particular and persuasive evidence. *E.g.*, *United States v. South Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

### III. Analysis

#### A. *Necessary* Witness

Plaintiffs maintain that Thomas' role on Defendant's accommodation team makes him a *necessary* witness to this litigation. (ECF No. 60.) While Plaintiffs generally allege that this role prejudices their clients and hinders the flow of information during discovery, they have not identified what specific information they hope to and can acquire from Thomas if he serves as a witness. Applying Michigan Rule of Professional Conduct 3.7, courts have previously held that "attorneys are not *necessary* witnesses if the substance of their testimony can be

6

elicited from other witnesses and the party seeking disqualification did not previously state an intent to call the attorney as witness." *People v. Tesen*, 739 N.W.2d 689, 695 (Mich. Ct. App. 2007); *see also Oblinger v. Donegal Grp. Inc.*, No. 18-cv-775, 2019 WL 393691 (S.D. Ohio 2019) (holding that, based on identical Ohio professional conducts rules, an attorney is not a *necessary* witness when the information sought can be acquired elsewhere).

In the case at hand, Plaintiffs already deposed Deputy City Attorney Margaret Rabadaugh, the senior attorney serving on the accommodation team, who has not entered her appearance in this litigation. The over 200-page transcript from Rabadaugh's deposition details that the role of the city attorney's office in connection with the accommodation team was "advis[ing] Jess and Kim" during the committee meetings. (ECF No. 60-3 at PageID.1726.) Although Radabaugh extensively testified about her and Thomas' role during their service on the accommodation team (although admittedly failing to state exact details under attorney-client privilege), Plaintiffs contend that they need additional information from Thomas.

In support of their motion, Plaintiffs rely heavily on *Abdi v. Infidels, LLC*, No. 24-cv-00230, 2025 WL 394971 (M.D. Tenn. 2025), where the court found that the defendants' in-house attorney was a *necessary* witness due to his personal knowledge of the plaintiff's alleged discriminatory termination. However, the

7

facts of *Abdi* differ greatly from this case. In *Abdi***,** the attorney was considered a *necessary* witness because he *solely* and *directly* ordered the alleged discrimination, in that he was "integrally involved in the issues in th[e] case because he interviewed and hired Abdi; controlled her salary and benefits; terminated her, and made discriminatory remarks." *Id*. at *2. The record here, in comparison, reflects that Thomas' role on the accommodation team was limited to providing purely legal advice to the HR members, and that he was entirely removed from directly interacting with Plaintiffs. Unlike the attorney in *Abdi* who served in multiple business roles and made critical business decisions, Thomas provided advice to the accommodation team only in a legal capacity. (*See generally* ECF No. 60-3.) Therefore, Thomas' personal knowledge is not nearly as central and distinct as counsel's personal knowledge in *Abdi*.

While this Court acknowledges Plaintiffs' argument that Thomas retains his own unique recollection of events during the committee meeting, his role as an additional legal advisor to Radabaugh does not provide a substantially different perspective to make him a *necessary* witness. Although the non-legal members of the committee could not precisely recall meeting discussions during their depositions, Thomas' testimony will not provide Plaintiffs additional information since his legal advisor role creates the same attorney-client barriers as it did for Radabaugh. Plaintiffs will be unable to gather further specificities on the exact

advice that was shared given that the extent of such advice is subject to attorney-client privilege. (*Id.* at PageID. 1713.)

Furthermore, as Defendant points out, Plaintiffs did not call Thomas as a witness until they filed their *Second Amended* Witness List on December 11, 2024, almost eight months after their initial witness list was submitted. (ECF No. 26.) Where "the possible circumstances under which [counsel] ought to be called as a witness are so remote and intangible," they may "lead to a suspicion that the motion to disqualify might be in reality a tactical device to disadvantage [the opposing side]." *See Kubiak v. Hurr*, 372 N.W.2d 341, 346 (Mich. Ct. App. 1985). Thomas entered his appearance in this litigation shortly after it commenced, and Plaintiffs have known about his participation on the accommodation team for some time. Their delayed inclusion of him on their witness list and attempt to obtain discovery from him suggests bad faith. In comparison, in *Abdi*, the plaintiff filed a motion to disqualify defendant's in-house attorney in immediate response to the entry of his appearance in the litigation. *See Abdi*, 2025 WL 394971, at *1. Given Plaintiffs' delay and failure to show how Thomas' testimony would differ from existing testimony, this Court finds that he is not a *necessary* witness.

Plaintiffs' inability to show that Thomas is a *necessary* witness is sufficient to deny their motion. However, to be thorough, the Court considers whether

9

Plaintiffs may even seek discovery or testimony from Thomas under the *Shelton* rule.

### B. Shelton Rule & Attorney-Client Privilege

As set forth earlier, under the *Shelton* rule, discovery from and the testimony of a party's attorney are precluded unless the party seeking the discovery or testimony shows that: "(1) no other means exist to obtain the information . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton,* 805 F.2d at 1327. Plaintiffs do not address the *Shelton* rule. Therefore, they fail to show that any of the three requirements are satisfied. For the reasons below, the Court concludes that they are not.

First, as this Court previously outlined, Plaintiffs have had alternative means to both discover information about the accommodation team's process and decisions and to explore them in depth. Plaintiffs deposed three of the four members of the accommodation team, including the senior member of Defendant's in-house legal team. (*See* ECF Nos. 60.3, 60.4, 60.5.) Although it is unclear what additional information Plaintiffs hope to acquire through Thomas, it appears that

10

most of the information sought is protected by attorney-client privilege. Therefore, the Court also finds that the information is privileged.

In support of their motion, Plaintiffs cite a similar and recent religious accommodation case, *Dadosky v. Mid-America Conversion Services, LLC,* No. 22-cv-02503, 2025 WL 1104560 (S.D. Ohio 2025). However, *Dadosky* is distinguishable from the case at hand. Although the court in *Dadosky* found that the defendant was unable to prove attorney-client privilege for communications during a similar accommodation committee meeting, it reached this conclusion because the defendant did not provide sufficient evidence to prove that the attorney's communications were of a legal nature, rather than "a predominately business purpose." *Id*. at *6-7. That is not the case here.

Radabaugh's testimony reflects that the legal advisors on the accommodation team worked only in a legal capacity, and Radabaugh confirmed that they never served a greater business function – never acting as the final decision-makers, interviewing employees, nor authoring business documents. (*See generally* ECF. No. 60-3.) Radabaugh's testimony adequately substantiates the legal department's role, and it is synonymous to the "affidavit from in-house counsel regarding the content of the [Accommodations Review Committee] discussions" that the *Dadosky* court requested as proof of attorney-client privilege.

11

*Id*. at *7.  Accordingly, Defendant has sufficiently shown that the information Plaintiffs seek is privileged under attorney-client communications.

Finally, Plaintiffs fail to show that the information they seek is crucial to the preparation of their case.  In neither their initial motion nor their reply brief have Plaintiffs outlined the information they seek from Thomas beyond general terms of "personal knowledge" regarding the "decision-making process" and "evidence of discrimination."  (ECF No. 60 at PageID.1653, 1663; ECF No. 72.)  Similar cursory language was used by the movant in *Domski v. Blue Cross Blue Shield of Michigan*, No. 23-12023, 2024 WL 4609575 (E.D. Mich. 2024), leading the court to determine that the plaintiff's inability to "articulat[e] what specific information [they sought] to elicit" and "why that information would be crucial" results in a failure to meet the third *Shelton* factor.  *Id*. at *4.  Therefore, this Court finds the lack of specificity from Plaintiffs in this case to be equally indicative of a failure to show that the information sought is imperative.

## IV.   Conclusion

In summary, the Court finds no basis to disqualify Thomas as Defendant's counsel in this litigation given that Plaintiffs are unable to prove that he is a *necessary* witness and that the information sought from him is unobtainable elsewhere, crucial to the case, and unprotected by attorney-client privilege.  As previously stated, disqualification of counsel is a drastic measure taken by courts to

ensure judicial integrity and should be exercised infrequently. As Plaintiffs have failed to meet the high burden of proof required for disqualification, Thomas' disqualification is not warranted.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to disqualify counsel (ECF No. 60.) is **DENIED**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 10, 2025