UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER ALEXA, JEFF MALONE,
and TIM RUGG,

          Plaintiffs,

                                    Case No. 22-cv-13073

v.                                    Honorable Linda V. Parker

CITY OF ANN ARBOR,

          Defendant.

_____/

## OPINION AND ORDER

This lawsuit arises from the COVID-19 pandemic, and the City of Ann

Arbor's denial of religious exemptions to Plaintiffs, former City employees, from

its mandatory COVID-19 vaccination policy.  As the lawsuit currently stands,

Plaintiffs Jennifer Alexa, Jeff Malone, and Tim Rugg allege that the City of Ann

Arbor ("City") failed to accommodate their religious beliefs in violation of Title

VII of the Civil Rights Act of 1964 ("Title VII") (Count I) and Michigan's Elliott-

Larsen Civil Rights Act ("ELCRA") (Count II).  Plaintiffs also bring a First

Amendment claim under 42 U.S.C. § 1983 (Count III).  The matter is presently

before the Court on the following motions:

- The City's Motion for Separate Trials (ECF No. 87), which is fully briefed (ECF Nos. 95, 102);

- The City's Motion to Disqualify Plaintiffs' Expert, Kyle McKenna, Ph.D. (ECF No. 89), which also is fully briefed (ECF Nos. 96, 106);

- Plaintiffs' Motion to Alter or Amend Order to Certify Final Judgment under Rule 54(b) (ECF No. 105), to which the City responded (ECF No. 120);

- Plaintiffs' Motion for Reconsideration and for Interlocutory Appeal (ECF No. 108), to which the City responded (ECF No. 119); and

- Plaintiffs' Motion to Strike Declarations of Margaret Radabaugh (ECF No. 132), to which the City responded (ECF No. 138).

Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  The Court's ruling on the motions follows.

**<u>Motion for Separate Trials</u>**

The City moves pursuant to Federal Rule of Civil Procedure 42(b) for severance of Plaintiffs' claims for trial.  The City contends that there is a strong likelihood of juror confusion and a risk of unfair prejudice if Plaintiffs' claims are tried together, as they involve three individuals asserting different religious beliefs in support of their requests to be exempted from the City's COVID-19 vaccination requirement.  Plaintiffs respond that while the sincerity of their religious beliefs is at issue, the "real crux" of the case will be the disparate treatment and First Amendment violation they similarly experienced.  Plaintiffs maintain that jury instructions can remedy any risk of confusion and prejudice due to the individualized evidence regarding the sincerity of their beliefs.

2

Rule 42(b) reads:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b); *see also Craddock. v. FedEx. Corp. Servs.*, 102 F.4th 832, 839 (6th Cir. 2024) ("[D]istrict courts may bifurcate a trial to promote convenience, avoid prejudice, or in service of expedition and economy."). "Only one of these criteria need be met to justify bifurcation." *HRT Enters. v. City of Detroit*, 163 F.4th 319, 333 (6th Cir. 2025) (quoting *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996)) (alteration omitted). The trial court "ha[s] broad discretion in determining whether to bifurcate proceedings[,]" *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 344 (6th Cir. 2011), and the decision "is dependent on the facts and circumstances of each case[,]" *Craddock*, 102 F.4th at 839 (quoting *Saxion*, 86 F.3d at 556).

The Court appreciates that the jury will have to separately evaluate each Plaintiffs' varying beliefs relative to the COVID-19 vaccine. Nevertheless, Plaintiffs assert identical claims arising from the same City policy and decisions by the same individuals. The decisionmakers applied the same process and criteria when considering Plaintiffs' exemption requests and offered similar reasoning for rejecting those requests.

3

Any risk of confusion is substantially outweighed by the inefficiency and waste of resources to the parties and this Court by trying Plaintiffs' claims before three separate juries, who will hear much of the same evidence.  As the cases cited in Plaintiffs' response brief reflect, courts often deny motions for separate trials in the employment discrimination context.  (*See* ECF No. 95 at PageID.4704.)  The distinctions between the plaintiffs' claims in *O'Hailpin v. Hawaiian Airlines, Inc.*, No. 22-00532, 2025 WL 1349054 (D. Hawaii May 7, 2025)—a case on which the City heavily relies—are not as significant here.

For these reasons, the Court is denying the City's motion to bifurcate.

### Motion to Disqualify Plaintiffs' Expert

The City seeks to disqualify the expert report and testimony of Kyle C. McKenna, Ph.D., a biology professor and ocular immunologist, who Plaintiffs retained to discuss the development of the different COVID-19 vaccines, the role of fetal cells in the vaccines' development and in other pharmaceutical research, and any ties between fetal cells and five over-the-counter ("OTC") medications (Aspirin, Ibuprofen, Benadryl, Sudafed, and Claritin).  Dr. McKenna intends to address the belief that COVID-19 vaccines were developed in the same fashion as these OTC medications with respect to the utilization of fetal cells.  He then intends to discuss the reliance on an employee's use of these OTC medications to assess whether the employee has a sincerely-held religious belief justifying the

refusal to receive a COVID-19 vaccine.  The City maintains that Dr. McKenna's opinions exceed his area of expertise and extend to theology, as he addresses religious beliefs concerning vaccination and OTC medications.

Federal Rule of Evidence 702 requires trial judges to perform a "gatekeeping role" when considering the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  The Sixth Circuit Court of Appeals describes this gatekeeping function as an "obligation . . . to exclude from trial expert testimony that is unreliable and irrelevant."  *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (internal quotation marks omitted).  It is designed "to protect juries from being swayed by dubious scientific testimony."  *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (quoting *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012)) (emphasis removed).

As the gatekeeper, the trial court must determine whether the proposed expert's opinion satisfies three requirements parsed from Rule 702.  *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008).  First, the witness must be qualified according to his or her "knowledge, skill, experience, training, or education."  *Id.* at 529 (quoting Fed. R. Evid. 702).  Second, the expert's testimony must be relevant, in that it will help "the trier of fact to

5

understand the evidence or to determine a fact in issue." *Id*. (same).  Third, the

testimony must be reliable.  *Id*. (same).

Rule 702 also provides "general standards to assess reliability: whether the

testimony is based upon 'sufficient facts or data,' whether the testimony is the

'product of reliable principles and methods,' and whether the expert 'has applied

the principles and methods reliably to the facts of the case.'"  *Id*. (quoting Fed. R.

Evid. 702).  In *Daubert*, the United States Supreme Court set forth a non-

exhaustive list of factors for trial courts to consider in evaluating the reliability of

expert testimony.  509 U.S. at 592-93; *see also In re Scrap Metal Antitrust Litig.*,

527 F.3d at 529 (citing *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001)).

Those factors include "testing, peer review, publication, error rates, the existence

and maintenance of standards controlling the technique's operation, and general

acceptance in the relevant scientific community."  *In re Scrap Metal Litig.*, 527

F.3d at 529 (quoting *Langan*, 263 F.3d at 621).  "The test of reliability is

'flexible,'" however, "and the *Daubert* factors do not constitute a 'definitive

checklist or test,' but may be tailored to the facts of a particular case."  *Id*. (quoting

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).

Reliability should not be confused with credibility or accuracy.  *See id.*  "[A]

determination that proffered expert testimony is reliable does not indicate, in any

way, the correctness or truthfulness of such an opinion."  *Id*.  The court's task in

6

assessing reliability is not to decide whether the expert's opinion is correct, but "whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation. *Id.* (citing Fed. R. Evid. 702; *Conwood Co.*, 290 F.3d at 792). Further, "rejection of expert testimony is the exception, rather than the rule[.]" *Id.* at 530 (citation omitted).

Contrary to the City's assertion, many of the opinions offered by Dr. McKenna do not exceed his knowledge, skill, experience, training, or education, by crossing over into theology. His explanation of how COVID-19 vaccines and OTC medications were developed, and his comparison of their development in connection with fetal cells, will be helpful to the jury in assessing whether Plaintiffs' claimed religious beliefs precluded them from being vaccinated. However, Dr. McKenna goes further in his opinions when he discusses religious philosophy with regard to whether the use of fetal cells in the development of vaccines and OTC medications is sufficiently remote to permit an individual to be vaccinated or use those OTC medications.

Dr. McKenna is not trained in religious theory, and he expressly acknowledged that he is not a religious scholar. (*See* ECF No. 96-3 at PageID.5015.) Aside from being able to share his own beliefs as a Catholic— which are irrelevant to this lawsuit, particularly as no Plaintiff is Catholic—Dr. McKenna lacks the qualifications to provide expert testimony on how Plaintiffs'

7

specific religious beliefs impact their view of the use of fetal cell lines in drug development. Even if Dr. McKenna professed to be a religious scholar, he did not interview Plaintiffs to gain an understanding of their specific religious views with respect to the issue. He expressly acknowledged that different people have different religious approaches to the problem. (*See* ECF No. 96-3 at PageID.5008.)

For these reasons, the Court is granting in part and denying in part the City's motion to disqualify Dr. McKenna's expert opinion and testimony. Dr. McKenna may provide testimony regarding the development of vaccines and OTC medication, particularly the role of fetal cell lines in their development. However, he is precluded from testifying on how, from a religious perspective, that development impacts an individual's willingness to be vaccinated or use the OTC medications.

## Motion to Alter or Amend Order to Certify Final Judgment under Federal Rule of Civil Procedure 54(b)

### Background

This case was originally filed by four individuals: Alexa, Malone, Rugg, and Brandon Boggs (collectively "Original Plaintiffs"). Thereafter, the City filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) with respect to Boggs' Title VII and ELCRA failure to accommodate claims because he never submitted or otherwise informed the City of his need for a religious exemption from its mandatory vaccination policy and voluntarily

8

resigned his employment. (ECF No. 14.) On November 8, 2023, the Court issued a decision granting the City's motion. (ECF No. 19.) Although the motion and decision only addressed Boggs' reasonable accommodation claims, not the First Amendment claim asserted by the Original Plaintiffs in Count II of their Amended Complaint, Boggs was inadvertently terminated as a party after the decision was entered. (11/8/23 Text-only Entry.)

None of the parties pointed out the Court's error or moved for reconsideration. Nor did Alexa, Malone, and Rugg (collectively "Remaining Plaintiffs") seek to include any claims by Boggs in the amended pleading they moved to file on October 21, 2024—almost a year after Boggs was terminated from the action. (*See* EF Nos. 27, 27-1.) In fact, the Remaining Plaintiffs expressly stated in their motion that their proposed amended pleading "would delete all references to Mr. Boggs." [1] (ECF No. 27 at PageID.235 n.2; *see also id.* at PageID.236.)

After the motion to amend was fully briefed, the Remaining Plaintiffs and the City stipulated to an order granting the motion. (ECF No. 34.) However, the

---

[1] By choosing to file an amended pleading omitting Boggs and his claims, rather than seeking to reintroduce his § 1983 claim that was inadvertently dismissed, the Court believed his claims were voluntarily abandoned. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 36 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The original pleading no longer performs any function in the case.") (internal quotation marks and citation omitted).

Second Amended Complaint the Remaining Plaintiffs subsequently filed on December 5, 2024, was not the same proposed pleading attached to their motion. (*See* ECF No. 35.) Instead, the filed pleading reintroduced Boggs as a plaintiff and his First Amendment claim. (*See id.*)

Because the filed pleading was not the one the City agreed Plaintiffs could file, and because Plaintiffs had not moved and/or received court approval to file the pleading, the City moved to strike it. (ECF No. 46.) The Court granted the motion, instructing Plaintiffs to file the proposed Second Amended Complaint they had attached to their motion—that being, the pleading the stipulated order allowed them to file. (ECF No. 62.) That Second Amended Complaint was filed on April 16, 2025, naming only Malone, Alexa, and Rugg as plaintiffs. Then, on April 28, 2025—at this point almost a year and a half after Boggs was terminated—Plaintiffs moved to file yet another amended pleading which reintroduced Boggs' First Amendment claim and added three new defendants: former and current City employees John Fournier, Margaret Radabaugh, and Matt Thomas. (ECF No. 70.)

On July 14, 2025, the Court denied Plaintiffs' motion to file their proposed third amended complaint. (ECF No. 94.) The Court acknowledged that the City had not previously moved to dismiss Boggs' First Amendment claim under 42 U.S.C. § 1983, and that the Court had not addressed the claim in its decision granting the City's motion; however, the Court concluded that the claim was futile

for the reasons stated in its earlier decision for dismissing his reasonable accommodation claims and for the additional reasons set forth in its decision denying the motion to amend.  (*See id.* at PageID.4677 n.1.; *see also id.* at PageID.4682-83.)  The Court found that Plaintiffs' claims against the three new proposed defendants were time barred and that equitable tolling did not apply.  (*Id.* at PageID.4679-81.)

Plaintiffs then filed the instant "Motion to Alter or Amend Order to Certify Final Judgment Under [Federal Rule of Civil Procedure] 54(b).  (ECF No. 105.)  In their motion, Plaintiffs ask the Court to certify the July 14, 2025 decision denying their motion to file a third amended complaint as a final judgment, so they may immediately raise on appeal the denial of their request to revive Boggs' First Amendment § 1983 claim.  While Plaintiffs briefly mention Federal Rules of Civil Procedure 59(e) and 60(a) in the motion (*see id.* at PageID.5221), they do not develop any argument for why relief should be granted under either rule.  Further, the "mistake" they refer to is the initial termination of Boggs as a plaintiff, which is not the decision they seek to certify.

## Applicable Standard & Analysis

Traditionally, the "final judgment rule" governs, which "instructs that 'a party may not take an appeal until there has been a decision by the trial court that ends the litigation on the merits and leaves nothing for the court to do but execute

11

the judgment.'" *Sherrod v. Wal-Mart Stores, Inc.*, 103 F.4th 410, 412 (6th Cir. 2024) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981)) (ellipsis and brackets omitted). "[A]ppellate jurisdiction customarily extends only to review of 'final decisions.'" *Id.* (quoting 28 U.S.C. § 1291). "Generally speaking, a final decision is one that disposes of all claims and parties in a case." *Id.* at 412-13 (citations omitted).

Rule 54(b) provides an exception to this rule. As the Sixth Circuit explained in *Sherrod*:

> The Rule concerns cases that "present more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved." Fed. R. Civ. P. 54(b). In those instances, the district court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties," but "only if the court expressly determines that there is no just reason for delay." *Id*. In this way, Rule 54(b) addresses the complexities that can attend to the liberal joinder provisions in the Federal Rules by seeking to avoid unnecessary delays in entering final judgment as to claims or parties which are distinct from those remaining before the district court. *See* 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2654 (4th ed. 2023). At the same time, this vehicle may not be used as an end run around the final judgment rule. *See Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 440 . . . (1956) (Frankfurter, J., concurring) (recognizing that Rule 54(b) does not upset the federal prohibition against piecemeal appeals).

*Sherrod*, 103 F.4th at 413. The Sixth Circuit has stated elsewhere that "Rule 54(b) certification should not be granted routinely. Instead, it should be invoked only in

12

'infrequent harsh case[s]'" *S2 Yachts, Inc. v. ERH Marine Corp.*, 855 F. App'x 273, 275 (2021) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 5 (1980)). "Although Rule 54(b) provides a means by which a district court may release for immediate appeal final decisions resolving 'one or more but fewer than all of the claims or parties' in a multi-claim or multi-party action, Fed. R. Civ. P. 54(b), it does not empower the district court to 'treat as 'final' that which is not 'final' within the meaning of [28 U.S.C.] § 1291.'" *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986) (quoting *Mackey*, 351 U.S. at 431).

To certify a final judgment under Rule 54(b), "the district court 'must expressly' (1) 'direct the entry of final judgment as to one or more but fewer than all the claims or parties' and (2) 'determine that there is no just reason to delay appellate review.'" *S2 Yachts*, 855 F. App'x at 275. (quoting *Gen. Acquisition, Inc. v. GenCorp., Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994)). The first step "is satisfied where some decision made by the district court ultimately disposes of one or more but fewer than all of the claims or parties in a multi-claim/multi-party action." *Gen. Acquisition*, 23 F.3d at 1026-27. "The second step . . . requires the district court to balance the needs of the parties against the interests of efficient case management." *Id*. at 1027.

13

When engaging in the second inquiry, the court "must strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants." *Id*. (quotation marks and citation omitted).  The Sixth Circuit has provided a non-exhaustive list of factors which may bear on whether to find just reason for delay:

> (1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; [and] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Planned Parenthood S.W. Ohio Region v. DeWine*, 696 F.3d 490, 503 (2012) (quoting *Corrosioneering*, 807 F.2d at 1283).

"It is well settled that 'an order denying leave to amend a complaint is not a 'final decision' within the meaning of 28 U.S.C. § 1291.'" *Kahn v. Chase Manhattan Bank, N.A.*, 91 F.3d 385, 388 (2d Cir. 1996) (brackets omitted) (quoting *DeNubilo v. United States*, 343 F.2d 455, 456-57 (2d Cir. 1965)); *see also Johnson v. Crown Enterprises Inc.*, 178 F. App'x 393, 394 (5th Cir. 2006) (citing *McClune v. Shamah*, 593 F.2d 482 (3d Cir. 1979); *Fowler v. Merry*, 468 F.2d 242, 243 (10th

Cir. 1972)); *Lambro v. United States*, No. 2025-1825, 2025 WL 2304784, at *1 (Fed. Cir. Aug. 11, 2025) (quoting *In re Wolfe*, No. 497, 1997 WL 173205, at *2 (Fed. Cir. Mar. 20, 1997)) (holding that "an order denying a motion for leave to amend a complaint to add the claims of additional plaintiffs is not a final order"); *Williams v. Bisenius*, No. 24-cv-10080, 2024 WL 923534, at *2 (D. Mass. Mar. 4, 2024) (citing *Kartell v. Blue Shield of Mass., Inc.*, 687 F.2d 543, 551 (1st Cir. 1982)). As the Sixth Circuit has plainly stated: "An order denying a motion to amend a complaint is not appealable." *McFall v. Wilson*, No. 88-5645, 1988 WL 83833, at *1 (Aug. 12, 1998) (collecting cases); *see also Romanov v. State Farm Mut. Auto. Ins. Co.*, No. 23-5868, 2023 WL 10555168, at *1 (6th Cir. Dec. 5, 2023) (citing *Marathon Petro. Co. v. Pendleton*, 889 F.2d 1509, 1511 n.1 (6th Cir. 1989)). The relevant factors also do not support a finding of "no just reason for delay."

The Court's decision denying the Remaining Plaintiffs' motion to file a third amended complaint is not effectively unreviewable on appeal from a final judgment. Future developments in the case may also moot the need for review or require that the same issues be reviewed a second time. The Remaining Plaintiffs assert the same First Amendment claim sought to be resurrected for Boggs, and they assert the same reasonable accommodation claims Boggs initially brought and which were dismissed. The Sixth Circuit might be obliged to consider the Court's

15

decision on the motion to amend a second time, as Plaintiffs sought other amendments besides the reintroduction of Boggs and his First Amendment claim.

Finally, Plaintiffs' delay in seeking to appeal the exclusion of Boggs from the lawsuit weighs against Rule 54(b) certification.  Plaintiffs could have easily sought to correct the dismissal of Boggs in November 2023, yet they waited almost a year and a half to properly move to add him back into the lawsuit.  In the interim, they filed a Second Amended Complaint which did not include Boggs, conveying that his claims had been abandoned.  Also in the interim, the adjudication of the Remaining Plaintiffs' claims continued, with the discovery and dispositive motion deadlines expiring and the City filing its summary judgment motion before Plaintiffs filed the pending motion.  Any potential efficiency justifying immediate review has been defeated by their lack of diligence.

For these reasons, the Court is denying Plaintiffs' Rule 54(b) motion.

### **Motion for Reconsideration and for Interlocutory Appeal**

### **Background**

Plaintiffs moved to disqualify Matthew Thomas as counsel for the City in this litigation, arguing that his position as a member of the City's "accommodation team" makes him a necessary witness to the present litigation and precludes him from serving as counsel.  Thomas served as a member of the accommodation team in his capacity as a City Attorney.  The accommodation team consisted of four

16

members: Benefits Supervisor Jessica Hull, Benefits and Wellness Specialist Kimberly Barry, Deputy City Attorney Margaret Radabaugh, and Thomas. The accommodation team reviewed the forms submitted by City employees, like Plaintiffs, who sought an exemption from the City's COVID-19 vaccination mandate, and decided whether exemptions would be granted. The evidence presented reflected that Thomas and Radabaugh worked purely in a legal capacity on the accommodation team, providing legal guidance and opinions with respect to the exemption requests. The record further reflected that Hull and Barry decided whether to grant or deny employee exemption reports based on that advice.

The Court denied Plaintiffs' motion to disqualify Thomas on July 10, 2025, concluding first that he was not a necessary witness as any information Plaintiffs hoped to acquire from him was protected by the attorney-client privilege and Plaintiffs failed to show what non-privileged information he could provide. The Court further noted that Plaintiffs did not add Thomas as a witness until they filed their Second Amended Witness list on December 11, 2024—long after the litigation commenced, he entered his appearance, and his role on the accommodation team had been known. Plaintiffs' delay suggested that their motion to disqualify was in reality a tactical device to disadvantage the City.

As a further reason to deny Plaintiffs' motion, the Court discussed the "*Shelton* rule," set forth by the Eighth Circuit in *Shelton v. American Motors*

*Corporation*, 805 F.2d 1323, 1327 (1986), and adopted by the Sixth Circuit in

*Nationwide Mutual Insurance Company v. Home Insurance Company*, 278 F.3d

621, 628-29 (2002).  Under the *Shelton* rule, "[d]iscovery from an opposing

counsel is 'limited to where the party seeking to take the deposition has shown that

(1) no other means exist to obtain the information; (2) the information sought is

relevant and nonprivileged; and (3) the information is crucial to the preparation of

the case.'"  *Nationwide Mut. Ins.*, 278 F.3d at 628 (quoting *Shelton*, 805 F.2d at

1327) (ellipsis removed).

As the Court discussed, Plaintiffs failed to address the *Shelton* rule in their

motion, and so they failed to show that the three requirements for seeking

discovery from counsel for the City were satisfied.  The Court found that they were

not.  First, Plaintiffs had alternative means to discover information about the

accommodation team's process and decisions and to explore them in depth.

Plaintiffs had deposed three of the four accommodation team members.  The

testimony gleaned from Radabaugh showed that Thomas' role on the

accommodation team was limited to providing legal advice.  Thus, any additional

information Plaintiffs hoped to acquire through Thomas appeared to be protected

by attorney-client privilege.  Lastly, Plaintiffs failed to show that the information

they sought from Thomas was crucial to the preparation of their case.

Plaintiffs now seek reconsideration of that ruling, arguing that the Court made a factual mistake with respect to Thomas' role on the accommodation team. According to Plaintiffs, the testimony of Hull, Barry, and Radabaugh reflects that all four members of the team evaluated whether someone had a sincere religious belief and "had a say" as to whether to grant or deny exemptions. Alternatively, Plaintiffs ask the Court to certify its decision for interlocutory appeal under 28 U.S.C. § 1292(b).

### Standard of Review

Pursuant to Eastern District of Michigan Local Rule 7.1(h)(2), motions for reconsideration may be granted on only three grounds: (1) a mistake of the court "based on the record and law before the court at the time of its prior decision" if correcting the mistake would change the outcome of the prior decision; (2) "[a]n intervening change in controlling law warrants a different outcome"; or (3) "[n]ew facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision." *Id.* The rule expressly advises that "motions for reconsideration of non-final orders are disfavored." *Id.* A motion for reconsideration "is not properly used as a vehicle to rehash old arguments or to advance positions that could have been argued earlier but were not." *Smith v. Mt. Pleasant Schs.*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 357, 374 (6th Cir. 1998)).

19

Under § 1292(b), a court "may certify an order for interlocutory appeal if it is 'of the opinion' that three conditions exist: '(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation.'" *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (quoting *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002)) (emphasis removed). "It is well-established that all three statutory requirements must be met for the court to certify an appeal under § 1292(b)." *In re Energy Conversion Devices, Inc.*, 638 B.R. 81, 88-89 (E.D. Mich. 2022) (quoting *Lang v. Crocker Park LLC*, No. 1:09 CV 1412, 2011 WL 3297865, *5 (N.D. Ohio July 29, 2011)); *see also In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (citation omitted). The party seeking an interlocutory appeal bears the burden of showing that an immediate appeal is warranted. *In re Flint Water Cases*, 627 F. Supp. 3d 734, 737 (E.D. Mich. 2022) (citing *In re Miedzianowski*, 735 F.3d at 384).

When deciding whether to certify an order for interlocutory appeal under § 1292(b), courts must heed the Sixth Circuit's warning that such review should be "granted sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d at 350 (citing *Kraus v. Bd. of Cnty. Rd. Comm'rs*, 364 F.2d 919, 922 (6th Cir. 1966)). The Supreme Court additionally has held that, in general, "[r]estricting

appellate review to final decisions prevents the debilitating effect on judicial administration caused by piecemeal appeal disposition of what is, in practical consequence, but a single controversy." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974).

### Analysis

The deposition testimony cited by Plaintiffs in their motion for reconsideration does not contradict the Court's earlier finding that Thomas' role on the accommodation team was solely to provide legal guidance.  Testimony that all four members of the team "had a say" or "evaluated each exemption" during their discussions is not proof that Thomas or Radabaugh voted on whether to grant or deny exemption requests or did more than provide legal advice and opine on whether the law supported a particular request.  Radabaugh's testimony that the team considered certain factors identified by the EEOC as rendering an applicant's religious beliefs more or less believable does not undermine the limited legal capacity she and Thomas served.  In fact, as Radabaugh expressly stated, the EEOC's suggested factors were part of the law relative to evaluating exemption requests.  (*See* ECF No. 60-3 at PageID.1758, 1836.)  Plaintiffs contend that Radabaugh testified that she and Thomas voted on whether each exemption should be granted; however, none of the evidence cited says that.

Radabaugh's affidavit is not the "bombshell" Plaintiffs claim it to be. The City did not waive the attorney-client privilege through this affidavit because Radabaugh provides that Alexa, Malone, and Rugg copied most or all of their personal statements from internet templates.[2] Radabaugh simply discloses a fact within her knowledge, not the substance of any communication between herself and Thomas, Hull, or Barry regarding the legal implications of the fact. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (explaining that "[t]he [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney")

Not only do Plaintiffs fail to show an error of fact in the Court's previous decision, but they also fail to show that correcting any defect would result in a different disposition of their motion to disqualify Thomas. Plaintiffs do not address the Court's finding that Thomas is not a necessary witness. Nor do they

---

[2] Notably, during Radabaugh's deposition, which was conducted months before Plaintiffs moved to disqualify Thomas, she testified at length about Plaintiffs' use of templates found on the internet. Nevertheless, Plaintiffs did not cite to this testimony in support of their motion. A motion for reconsideration is not a vehicle to raise evidence previously available to the movant. *See Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 483 F. App'x 85, 94-95 (6th Cir. 2012) (collecting cases finding no abuse of discretion when a district court declines to consider new evidence in a motion for reconsideration that was previously available).

cure their previous failure to address the requirements under the *Shelton* rule or the Court's analysis of those requirements.

Plaintiffs also fail to show that the requirements for certification under § 1292(b) are met.  This Court's decision to deny Plaintiffs' motion to disqualify Thomas as counsel for the City did not involve a controlling question of law as to which there is a substantial ground for difference of opinion.  Tellingly, Plaintiffs barely touch upon the second requirement aside from claiming that an interlocutory appeal would present an opportunity for the Sixth Circuit to provide guidance "regarding how involved in-house attorneys can be in an employment decision before they lose privilege."  (ECF No. 108 at PageID.5275.)

Plaintiffs do not show that the issue presented is difficult, novel, or one for which there currently is little precedent or guidance.  Nor do Plaintiffs show that a difference of opinion exists within the Sixth Circuit or among the circuits.  As such, they fail to show that the second criteria for certification under § 1292(b) is satisfied.  *See In re Miedzianowski*, 735 F.3d at 384 (explaining how a movant can show that there is a substantial ground for difference of opinion).  Nor would an immediate appeal materially advance the ultimate termination of the litigation.

For these reasons, the Court is denying Plaintiffs' motion for reconsideration and for certification for interlocutory appeal under § 1292.

### Motion to Strike Radabaugh's Declarations

23

Plaintiffs move to strike a declaration by Radabaugh submitted twice in support of the City's pending motion for summary judgment. (*See* ECF Nos. 92-3 and 116-1.) In the declaration, which was executed on July 7, 2025, Radabaugh explains the following: how the COVID-19 pandemic affected City operations, including the impact when employees contracted the virus and were absent from work; the City's institution of a vaccine mandate, which provided for medical and religious exemptions and the termination of unvaccinated individuals who did not request or were denied religious exemptions; and that Plaintiffs' personal statements submitted in support of their request for religious exemptions were copied mostly or completely from internet templates. (*See id.*) The declarations are almost identical. The second simply corrected the number of medical exemption requests the City received and approved. The first said that 15 requests were received and approved, but the correct number was 16.

Plaintiffs assert the following in support of their request to strike the declarations: (1) Radabaugh was not disclosed as a witness with respect to her non-privileged knowledge; (2) "one declaration was shoehorned into evidence without leave of court, almost four weeks after the motion for summary judgment was filed"; (3) they contain "s-slash" electronic signatures; (4) Radabaugh was represented as providing only legal advice and is now being "essentially weaponized at summary judgment"; (5) the declarations could not be based on

24

personal knowledge as Radabaugh provided only legal advice; and (6) they contradict prior testimony as Radabaugh previously claimed to have provided only legal advice, and she is now declaring that she discovered Plaintiffs copied their personal statements from internet templates.  These assertions are factually incorrect or do not warrant striking Radabaugh's declarations.

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Federal Rule of Evidence 602 sets forth the need for personal knowledge.  The Sixth Circuit has stated that "'[t]he threshold for Rule 602 is low,' and 'testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he [or she] testifies about.'"  *United States v. Smith*, 516 F. App'x 592, 595 (6th Cir. 2013) (quoting *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990)).  "[W]hen an affidavit is partially admissible and partially inadmissible, the district court must reject only those parts that are inadmissible."  *Ondo v. City of Cleveland*, 795 F.3d 597, 604 (6th Cir. 2015) (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009)).

25

Plaintiffs have been aware of Radabaugh since this case was filed. Not only did Plaintiffs know that she was a member of the accommodation team, but they listed her on their witness list in mid-December 2024, and the City's witness list included all individuals identified on Plaintiffs' list. (*See* ECF Nos. 36, 78.) The City produced Radabaugh for a deposition in January 2025, and it produced unprivileged documents to and from her.

Radabaugh's later-filed declaration was not untimely presented or "shoehorned into evidence." As explained, the later-filed declaration is almost identical to the one submitted with the City's opening summary judgment brief. It simply corrected an error in the number of medical exemptions the City received and approved.

Radabaugh's declarations are signed under penalty of perjury, as required under 28 U.S.C. § 1746. Because she is an attorney, the use of an electronic signature ("s-slash") is not improper. The local rules only require the scanned signature of a non-attorney.[3] *See* R.10(d) of the E.D. Mich. Electronic Filing Policies & Procedures.

There is no reason to believe that Radabaugh lacks personal knowledge of the facts set forth in her declaration. She is the Deputy City Attorney, and served

---

[3] To the extent her signature is necessary, this can be easily cured by an amended declaration. Any error is harmless to Plaintiffs and does not justify striking the declaration.

that role during the COVID-19 pandemic.  She advises staff on all legal matters with a primary focus on labor and employment-related issues.  She was involved in the City's handling of employment issues during the pandemic.  The City is not precluded from offering Radabaugh's declaration as to facts within her knowledge because it has invoked the attorney-client and work product privileges to shield some of her testimony and communications from disclosure.  As discussed earlier, the privileges are not waived by conveying facts as opposed to communications conveying legal advice.  Nor does Radabaugh's declaration in any way contradict her prior testimony or the City's claim that she provided only legal advice in her role as a member of the accommodation team.

For these reasons, the Court is denying Plaintiffs' motion to strike Radabaugh's declarations.

## Conclusion

In summary, the Court **DENIES** the City's motion for separate trials (ECF No. 87) and **GRANTS IN PART AND DENIES IN PART** its motion to disqualify Plaintiffs' expert, Dr. McKenna (ECF No. 89.)  The City's initial motion to disqualify Dr. McKenna (ECF No. 88) is **DENIED AS MOOT**.

Plaintiffs' motion under Rule 54(b) to amend the Court's decision denying their motion to file a third amended complaint (ECF No. 105) is **DENIED**, as is Plaintiffs' motion for reconsideration or interlocutory appeal of the decision

denying their motion to disqualify Thomas as defense counsel (ECF No. 108).  The

Court also **DENIES** Plaintiffs' motion to strike Radabaugh's declarations.  (ECF

No. 132).

     **SO ORDERED**.

s/ Linda V. Parker        
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 18, 2026