UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER ALEXA, JEFF MALONE,
and TIM RUGG,

                    Plaintiffs,

                                                            Case No. 22-cv-13073
v.                                                 Honorable Linda V. Parker

CITY OF ANN ARBOR,

                    Defendant.

_____/

## OPINION AND ORDER ADDRESSING OBJECTIONS TO SPECIAL DISCOVERY MASTER'S RESOLUTION OF MOTIONS

This lawsuit arises from the COVID-19 pandemic and the City of Ann Arbor's denial of religious exemptions to Plaintiffs, former City of Ann Arbor ("City") employees, from its mandatory vaccination policy. In response to the high volume of discovery disputes that arose as the litigation progressed, the Court appointed the Honorable Mona K. Majzoub, a retired magistrate judge for the United States District Court for the Eastern District of Michigan, to serve as a discovery master in this matter pursuant to Federal Rule of Civil Procedure 53. (*See* ECF Nos. 69, 83.) The order appointing Judge Majzoub gave her the authority to hear and rule upon motions by any party relating to pretrial discovery matters subject to any party's right to object. (*See* ECF No. 83 at PageID.3744.)

The order provided that objections to any decision by Judge Majzoub had to be filed within ten days of when she issued the decision. (*See id*. at PageID.3749.) Objections to Judge Majzoub's findings of fact and conclusions of law are subject to de novo review. (*See id*. at PageID.3749.) Her ruling on a procedural matter, if objected to, is subject to review for an abuse of discretion. (*See id*.) Judge Majzoub has issued numerous decisions, many of which Plaintiffs have objected to. The Court proceeds to those objections.

### July 21, 2025 Report (ECF No. 103) on Plaintiffs' Motion to Compel Production of Documents (ECF No. 54)

### Background

On July 21, 2025, Judge Majzoub ruled on Plaintiffs' motion to compel the City's production of documents "in reasonably useable form." (*See* ECF No. 54.) This motion arose from the City's document production in response to Plaintiffs' First Request for Production of Documents ("RFP"). Plaintiffs argued that the City's production in .PDF format was not compatible with their counsel's document review platform, and they wanted the documents produced in another format at no cost to them. Plaintiffs also contended that the City included junk documents with the production (e.g., newsletters from third parties advertising deals for laptops and vacations).

Judge Majzoub held that the City's production was in accordance with Federal Rule of Civil Procedure 34(E) and the parties' discovery plan, there was no

2

basis for imposing the costs on the City to provide documents in the second format requested by Plaintiffs if the City agreed to do so, and that Plaintiffs failed to show that the "junk" documents were not in fact responsive to their RFP.  Judge Majzoub also pointed out that the City began producing documents in response to the RFP in March 2024, and when Plaintiffs raised any objections, it was not until February 2025 and concerned the technical issues Plaintiffs were having processing multiple PDFs due to their incompatibility with their counsel's platform.

**Plaintiffs' Objections (ECF No. 115)**

Plaintiffs object to Judge Majzoub's decision.  They claim that the parties' discovery plan allowed them to request documents in their original or native format, and that they did just that, but the City refused to produce documents in native format unless Plaintiffs paid significant costs.  Plaintiffs claim the City's second and third volumes of production, totaling more than 1,000 pages, were not organized or labelled as required.  Plaintiffs maintain that courts "have long forbade 'document dumps' comprised of voluminous and unresponsive documents without identification of specific pages or portions of documents which are responsive to the discovery requests[.]"  (*Id.* at PageID.6267 (citing *Stooksbury v. Ross*, 528 F. App'x 547, 551 (6th Cir. 2013).)  According to Plaintiffs, Judge Majzoub failed to address their complaints concerning thousands of blank pages

3

with deleted or missing information, including thousands of blank images in emails and pages with no content which were included in the City's production.

**Analysis**

As Judge Majzoub correctly found, Plaintiffs' RFP did not request documents in their original or native format, even if the discovery plan enabled them to do so.  In fact, the word "native" appears nowhere in the RFP, and the word "original" appears only in the definition of "Document" to include copies differing from the original.  (*See* ECF No. 54-1.)  The language from the RFP that Plaintiffs quote to show that they asked for documents in their native or original format did not do so.  (*See* ECF No. 115 at PageID.6266 (quoting ECF No. 54-1 at PageID.1027).)  Instead, it simply instructed the City to not engage in a "document dump," and to "categorize the documents and identify which discovery requests documents are responsive to for [sic] all documents produced."  (ECF No. 54-1at PageID.1027 (emphasis removed).)

The City made four document productions in response to Plaintiffs' RFP, electing to produce documents as searchable, bookmarked PDFs compatible with Adobe, which was in accordance with the agreed upon protocol.  Even if the bookmarked PDF did not work with Plaintiffs document review platform, they acknowledge that the City's first and fourth document productions are organized using embedded bookmarks correlating to the relevant document requests.  While

the City's second production was not bookmarked, the City provided supplemental written discovery responses identifying the document request to which each production was tied.  (*See* ECF No. 118-1.)  The City's third production, consisting of 343 pages, clearly contained communications relating to the implementation of the City's vaccine mandate, which was Plaintiffs' RFP No. 14.

As to Plaintiffs' complaint regarding "junk" documents, they fail to show that the documents were not responsive to the RFPs.  The documents produced in response to Plaintiffs' broad requests may in fact be irrelevant; however, Plaintiffs must show that they are not responsive to what was requested.  For example, a request for "all documents, communications, and ESI from any custodian who may be identified on [the City's] Witness List . . . that contain the word '*COVID*' any time since August 1, 2021" (*see* ECF No. 54-1 at PageID.1036)—notably, at time when the world was responding to the COVID-19 pandemic—was likely to generate a response containing thousands of irrelevant documents.  However, that is the result of how Plaintiffs formulated the request, not how the City responded to them.

For these reasons, the Court rejects Plaintiffs' objections to Judge Majzoub's July 21, 2025 decision.

5

**September 10, 2025 Further Amended Order (ECF No. 128)[1] Denying
Plaintiffs' Motion to Compel Documents for In Camera Review**

**Background**

In a September 9 and 10 "Amended Order" and "Further Amended Order"
(ECF Nos. 127, 128), Judge Majzoub addressed Plaintiffs' motion to compel
documents for in camera review (ECF No. 73).  In their motion, Plaintiffs
challenged the City's designation of documents as covered by the attorney-client
privilege and argued that the City waived the privilege by serving an untimely
privilege log and by producing some documents to and from its in-house attorneys,
Matthew Thomas and Margaret Radabaugh.

Judge Majzoub first concluded that the City had not waived the attorney-
client privilege.  She found that the City's responses to discovery and production of
a privilege log were not untimely, but that any delay did not warrant the sanction of
waiver.  Judge Majzoub further found that Plaintiffs failed to show that the
produced documents to and from Thomas and Radabaugh waived the privilege.

Turning to whether the attorney-client privilege applied to the
communications, Judge Majzoub looked to whether they involved legal advice or

---

[1] Plaintiffs' objection is to Judge Majzoub's September 9, 2025 Amended Order
addressing their motion to compel (ECF No. 73); however, Judge Majzoub entered
a "Further Amended Order" on September 10 (ECF No. 128).  Plaintiffs' docket
entry when filing their objections cites to ECF No. 126.  (*See* 9/19/25 Text Entry.)
Docket No. 126 addresses a different motion to compel, which Plaintiffs do not
address in their objections.

6

business advice and, if both, whether the main purpose was to give or get legal assistance—in other words, whether the legal advice predominated the communication.  Relying on this Court's decision on Plaintiffs' motion to disqualify Thomas as counsel in this case, which Judge Majzoub found to be the law of the case, Judge Majzoub concluded that Thomas' role on the Accommodation Team was limited to providing legal advice, that he only provided that advice in a legal capacity, and that Plaintiffs are precluded from obtaining discovery from him.

With respect to the City's privilege log, after reviewing the log and the 438 documents identified, Judge Majzoub ordered the production of fourteen (14) documents: 45, 46, 109, 133, 150, 151, 180, 181, 340, 341, 342, 344, 345, 348. (*See* ECF No. 128-1.)  She ordered their production within seven (7) days.

### Plaintiffs' Objections (ECF No. 129)

Plaintiffs argue that it was improper to rely on the "law of the case doctrine" to conclude that any communication to or from Thomas was privileged.  They maintain that the ruling concerning Thomas' role on the Accommodation Team has no effect, or a very limited effect, on whether the City improperly withheld documents by invoking the attorney-client privilege.

Plaintiffs also maintain that Judge Majzoub placed the burden on Plaintiffs, rather than the City, to show that it had not waived the attorney-client privilege,

7

where case law places the burden on the party claiming the privilege. Plaintiffs argue that the City's purported delay in producing the privilege log and use of Radabaugh's declaration in support of its summary judgment motion waived the attorney-client privilege.

According to Plaintiffs, the City did not meet the heavy burden of showing that the privilege applies. They maintain that Judge Majzoub failed to construe the attorney-client privilege narrowly because it is invoked by a municipality. Plaintiffs also maintain that Judge Majzoub erred in finding communications to constitute legal advice, when in fact they did not involve the interpretation and application of legal principles and constituted business decisions.

Lastly, Plaintiffs assert that the City should be sanctioned for having withheld documents as privileged, which Judge Majzoub concluded should be produced.

## Analysis

For the reasons articulated by Judge Majzoub, the Court does not find that any delay by the City in producing its privilege log warrants a waiver of the attorney-client privilege. Nor did the City otherwise waive the privilege. Plaintiffs did not request monetary sanctions for the City's alleged misclassification of communications as privileged, so Judge Majzoub could not have erred in not awarding them sanctions. The Court does not find sanctions warranted. As to

8

Plaintiffs' objections to Judge Majzoub's decision that address her assessment of whether documents are privileged, the Court finds it unnecessary to address those objections as it has reviewed de novo the communications that the City has refused to produce.

The attorney-client privilege "applies to confidential communications between a lawyer and his [or her] client arising from the client's request for legal advice." *In re FirstEnergy Corp.*, 154 F.4th 431, 436 (6th Cir. 2025) (citing *In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006)). Communications giving attorneys "a basis for legal advice" as part of "efforts to 'secure legal advice'" are protected. *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981)). The fact that the client may make business decisions based on the legal advice does not remove the privilege. *Id.* at 438.

For the attorney-client privilege to apply, these elements are required:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Roberts*, 84 F.4th 659, 670 (6th Cir. 2023) (quoting *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)). "When a communication involves both legal and non-legal matters, [courts] consider whether the predominant purpose of the communication is to render or solicit legal advice." *Id.* (quoting *Alomari v*

9

*Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015)) (internal quotation marks and additional citations omitted).

In *Ross v. City of Memphis*, 423 F.3d 596 (6th Cir. 2005), the Sixth Circuit held for the first time that a municipal corporation can assert the attorney-client privilege in the context of civil litigation. *Id.* at 601-02. The court reasoned that, like corporations, to which the privilege already had been held to apply, *see Commodity Futures Trading Co. v. Weintraub*, 471 U.S. 343, 348 (1985), "[g]overnments must not only follow the laws, but are under additional constitutional and ethical obligations to their citizens. The privilege helps ensure that conversations between municipal officers and attorneys will be honest and complete. In doing so, it encourages and facilitates the fulfillment of those obligations[,]" *Ross*, 423 F.3d at 602. Although recognizing its prior decision in *Reed v. Baxter*, 134 F.3d 351, 356 (1998), where the court "cautioned that applying the privilege broadly to governmental entities ran counter to the 'strong public interest in open and honest government,'" the Sixth Circuit noted in *Ross* that it had "expressed no such hesitance in *In re Grand Jury Subpoena (United States v. Doe)*, 885 F.2d 135, 137-39 (1986). *Ross*, 423 F.3d at 600.

"The work-product doctrine applies to documents 'prepared in anticipation of litigation.'" *In re FirstEnergy Corp.*, 154 F.3d at 437 (quoting Fed. R. Civ. P. 26(b)(3)). The doctrine "ensures that an attorney may 'assemble information, sift

the relevant from the irrelevant facts, prepare his legal theories and plan his [or her] strategy without undue and needless interference.'" *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)) (ellipsis removed).  The doctrine "applies if the [party] or counsel created the documents 'because of' a party's 'reasonable' anticipation of litigation, as opposed to its ordinary business purposes." *Id.* (quoting *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009)).

The Court applied these principles when conducting its own in camera review of the documents on the City's privilege log that were still at issue when Judge Majzoub decided Plaintiffs' motion, and that she did not order the City to produce.  The Court finds that the vast majority are protected under the attorney-client privilege and/or the work-product doctrine.  However, the Court believes that the following documents (several of which are emails with the same string) are not and should be produced: 294, 295, 296, 297, 307, 308, 313, 314, 315, 316, 317, 318, 319, 338, 339, 343, 410.

The Court denies Plaintiffs' request for sanctions based on the City's previous withholding of the documents it has since been ordered to produce.  The Court finds sanctions unwarranted.

**October 7, 2025 Order (ECF No. 135) Denying Plaintiffs' Motion to Compel
Text Messages (ECF No. 135)**

**Background**

During discovery, Plaintiffs requested text messages between the members
of the City's "Accommodation Team" which evaluated requests by City employees
for exemptions from the mandatory COVID-19 vaccination policy: Benefits
Supervisor Jessica Hull, Benefits and Wellness Specialist Kimberly Barry, Deputy
City Attorney Margaret Radabaugh, and City Attorney Matthew Thomas. The City
objected, contending that because none of these individuals had City-owned
phones during the relevant period, text messages from their phones were beyond
the City's possession, custody, and control. The City further objected based on
attorney-client privilege. Plaintiffs moved to compel the production of the text
messages, arguing they were in the City's control and that a privilege did not
protect their disclosure. Alternatively, Plaintiffs argued that the messages should
be produced for in camera review to assess whether the attorney-client privilege
was properly invoked.

In an October 7, 2025 decision, Judge Majzoub found it unnecessary to
decide whether the text messages were protected by the attorney-client privilege
because she found that Plaintiffs failed to satisfy their burden of showing that the
messages were within the City's control. (*See* ECF No. 135.) Judge Majzoub
recognized that the Sixth Circuit has used both the "legal right" standard and

12

"practical ability" standard to assess whether documents are in an employer's possession, custody, or control, and considered cases where both standards were applied where a party moved to compel an employer's production of materials from employees.  Judge Majzoub concluded that the legal right standard should apply when a party moves an employer to produce information contained on its employees' personal devices pursuant to Federal Rule of Civil procedure 34.  She further concluded that none of the City's policies gave it control over the text messages on the cell phones of the Accommodation Team members.

### Plaintiffs' Objections (ECF No. 139)

Plaintiffs argue that the City has control over the text messages at issue based on its mobile phone and teleworking policies and that the City provided no affidavits from the Accommodation Team members to establish that these policies do not apply here.  Plaintiffs maintain that the policies apply, as they do not carve out an exception for anyone.  Plaintiffs further maintain that Jennifer Alexa's sworn declaration supports a finding that the policies give the City control over communications made via employee personal mobile devices.[2]  Plaintiffs suggest that governmental employees essentially concede control of work-related

---

[2] Plaintiffs assert that the City "concealed" the mobile device policy during discovery, which they later claim constituted an abuse of discovery.  However, Plaintiffs, or at least Alexa who was subject to the policy, were already aware of it.  In any event, the City's policies are publicly available on its website.  *See* *https://www.a2gov.org/*.

13

information on their personal devices to further "the goal of strengthening the bond between citizens and their government by ensuring transparency and accountability."  (ECF No. 139 at PageID.7056 (quoting *Jones v. City of Memphis*, 852 F. Supp. 2d 1002, 1011 (W.D. Tenn. 2012).)

**Analysis**

Rule 34 grants a party the authority to request, within the scope of Federal Rule of Civil Procedure 26(b), another party's production of *inter alia* any electronically stored information "in the responding party's possession, custody, or control[.]"  Fed. R. Civ. P. 34(a).  Many courts, as Judge Majzoub did here, apply the legal right standard to determine whether the responding party has control over the requested information.  Plaintiffs do not take issue with the use of this standard in their objections.

Under the legal right standard, the question is "whether the responding party 'has the legal right to obtain the documents on demand from someone else,' which is 'understood to include the legal right to command release from the party with actual possession.'"  *Allergan, Inc. v. Revance Therapeutics, Inc.*, No. 3:23-cv-00431, 2025 WL 984792, at *4 (M.D. Tenn. Mar. 17, 2025) (quoting *Halabu Holdings, LLC v. Old Nat'l Bancorp*, No. 20-10427, 2020 WL 12676263, at *3 (E.D. Mich. June 9, 2020)) (additional quotation marks and citation omitted).  As the district court recognized in *Halabu Holdings*:

> Some workplaces have, by agreement and practice, defined rights and responsibilities regarding personal cell phone and computer device use in connection with the employer's business.  For example, employers may contract for the right to access the employees' personal devices, and employers and employees may agree to use software that segregates employer data from the rest of the device.

2020 WL 12676263, at *3 (internal citations omitted).  The legal right to an employee's personal device does not arise simply based on the fact of employment or the employee's use of the device for work-related purposes.  *See Allergan*, 2025 WL 984792, at *7.  The party seeking production has the burden of proving that the responding party has control.  *See id*. at *7 (citing *Halabu Holdings*, 2020 WL 12676263, at *3); *see also Robert Bosch LLC v. Snap-On Inc.*, No. 12-11503, 2013 WL 823330, at *1 (E.D. Mich. Mar. 6, 2013).

Plaintiffs rely on the City's Mobile Device and Pager Policy and Telecommuting and Flexible Work Arrangements Policy to establish its control of the text messages on the personal mobile phones belonging to the members of the Accommodation Team.  The latter policy does state that "[t]elecommuters acknowledge that equipment used for business purposes but owned by the employee remain subject to public records laws (e.g., FOIA) or inspection by the employer *in some circumstances*."  (ECF No. 139-4 at PageID.7110 (emphasis

15

added).) Even assuming the current situation is one of those "circumstances,"[3] the policy applies to employees who have entered into telecommuting agreements with the City. Plaintiffs do not show that the members of the Accommodation Team are subject to such agreements.

The Mobile Device and Pager Policy "covers all City employees who are required to communicate via a mobile device while they are performing their duties as an employee of the City." (ECF No. 139-2 at PageID.7092.) The policy's purpose is "to provide efficient and effective services to its citizens and recognizes that some of its employees must be available either 24x7 or away from their office to perform their duties." (*Id*.) It provides that "[a]ll emails, texts, voicemails, and other electronic records related to official City business are subject to the City's FOIA policy (Administrative Policy #104)." (*Id*. at PageID.7094.)

As noted, the Court is not presented with a FOIA request. In any event, Plaintiffs again fail to show that the members of the Accommodation Team are subject to this policy. There is no evidence that these individuals qualify as "City employees who are required to communicate via mobile device while they are performing their duties" and are being reimbursed for use of their personal mobile phones for business. The fact that Plaintiff Alexa chose the employee-owned

---

[3] Plaintiffs are not seeking the messages through a FOIA request.

16

mobile phone option stipend as the City's Deputy Clerk (*see* ECF No. 139-7) is not proof that the Accommodation Team members did so, too.

As Plaintiffs bear the burden of proof, Plaintiffs are incorrect in their assertion that the Accommodation Team members "ostensibly conced[e]—based on their silence—[that] the policies apply to them." (*See* ECF No. 139 at PageID.7055.)  Plaintiffs also are incorrect in their assertion that Judge Majzoub "added a brand new requirement . . . that a party demonstrating control must prove the employees at issue admit to being subject to the city policies. (*Id*. at PageID.7056.)  Judge Majzoub only looked for proof from Plaintiffs—as it was their burden—to conclude that the subject policies in fact applied to the employees at issue.  She did not create an exception in the policies that are not there; instead, she correctly found that the policies, themselves, only applied to employees fitting certain categories (i.e., those employees required to communicate via a mobile device and who entered an agreement to receive a stipend for using their personal mobile device and those subject to a teleworking agreement).  Plaintiffs failed to show that the Accommodation Team members fell within either category.

The law does not support Plaintiffs' argument that there is an automatic legal right to the business-related communications on the personal mobile devices of public or municipal employees simply because of the nature of their employment. In *Flagg v. City of Detroit*, 252 F.R.D. 346 (E.D. Mich. 2008), which Plaintiffs cite

17

in support of their argument, the communications at issue were contained on city-issued text messaging devices, and the question the court addressed was whether the city had control of its non-party service provider which held the stored copies of the communications. *Id*. at 347-49. Notably, the court recognized that the city needed its employees' consent to produce the communications. *Id.* at 363-64. The court found that city employees had been advised in the city's electronic communications policy that electronic communications created, received, transmitted, or stored on the city's electronic communication system are public information and property of the city. *Id.* at 364-65. However, as discussed, there is no similar policy here applicable to communications on the personal mobile devices of employees.

*Adamczyk v. School District of City of Hamtramck Public Schools*, 667 F. Supp. 3d 534 (E.D. Mich. 2023), also does not further Plaintiffs' argument. There, again, the communications at issue were stored on "a work phone owned by the [defendant school district] and used by [the defendant school district superintendent[.]" *Id*. at 557. Plaintiffs' quoted language from *Halabu Holdings* is not convincing, either. (*See* ECF No. 139 at PageID.7071 (quoting *Halabu Holdings*, 2020 WL 12676263, at *3).) First, the case did not even involve government employees. Second, the court expressly concluded that employer

18

control depended on a legal right to access employee personal devices, such as a contract.  2020 WL 12676263, at *3.

Finally, *Robert Wigington v. Metropolitan Nashville Airport Authority*, No. 3:17-cv-01523, 2019 WL 12096809 (M.D. Tenn. May 31, 2019), did not involve the personal devices of municipal *employees*.  Instead, the magistrate judge addressed communications from the defendant airport authority's board of commissioners.  *See id*. at *1.  The court concluded that the airport authority had to produce the communications because it in fact had actual possession of them.  *Id.* at *4.  The court reasoned that the airport authority does not exist separately from its commissioners; rather, the commissioners are the airport authority's governing body.  *Id.*

For these reasons, the Court rejects Plaintiffs' objections to Judge Majzoub's October 7, 2025 decision.

### November 3, 2025 Order (ECF No. 142) Granting the City's Motion to Produce Communications

### Background

At Plaintiffs' depositions in this matter, counsel for the City asked questions about communications between them which occurred outside the presence of, or did not otherwise include, Plaintiffs' counsel.  Plaintiffs' counsel objected to the questions, citing the common interest privilege.  The City also served a request for production ("RFP") of documents on Plaintiffs, seeking "[a]ny and all non-

19

privileged communications between you and any other Plaintiff in this lawsuit since January 1, 2020." Plaintiffs objected on the same basis. In response to the City's RFP, Plaintiffs also objected on the basis of relevance, undue burden, and that they had no responsive non-privileged communications. The City filed a motion arguing that Plaintiffs should be compelled to be re-deposed on the questions they failed to answer based on the privilege and to produce documents related to those communications in response to its discovery requests.

Judge Majzoub held that Plaintiffs failed to satisfy their burden of showing that the common interest privilege applies. (ECF No. 142.) Judge Majzoub concluded that the privilege does not apply here, where Plaintiffs are represented by the same counsel. Further, Judge Majzoub found the invocation of the privilege misplaced as Plaintiffs' counsel was not involved in the communications for which discovery was sought. Addressing Plaintiffs' suggestion that their counsel meant to invoke the co-client privilege, rather than the common interest privilege, Judge Majzoub found the co-client privilege also inapplicable because Plaintiffs' counsel was not involved in the communications.

As to Plaintiffs' general objection based on relevance, Judge Majzoub noted that the scope of discovery is broad, and relevance is an "extremely low bar." She found that the City's requests could lead to potentially relevant evidence. She found Plaintiffs' general assertions that the requests were "burdensome, harassing,

20

[and] overbroad" to be inappropriate boilerplate objections.  As to Plaintiffs' claim that there were no documents responsive to the City's requests, Judge Majzoub pointed out deposition testimony where Plaintiffs acknowledged sending communications to one another.

### Plaintiffs' Objections (ECF No. 143)

In their objections, Plaintiffs argue that the City's request for "any and all" communications between them since January 1, 2020, is grossly overbroad and burdensome, and that the City failed to show that such communications are relevant.  Plaintiffs further argue that they represented that they had nothing relevant to produce, and they contend that Judge Majzoub ignored Plaintiff Tim Rugg's declaration in which he states that he diligently searched his emails and, contrary to his deposition testimony, did not exchange any emails with Plaintiff Alexa.  Plaintiffs maintain that it is the City's burden to present credible evidence that non-privileged communications do exist in response to its RFP.

Plaintiffs further argue that Judge Majzoub ignored legal authority in concluding that the common interest doctrine applies only when the parties retain separate counsel.  Plaintiffs maintain the privilege applies even when the parties are jointly represented by counsel if their communications with one another relate to the litigation.  To show that communications between them could have only related to the litigation, Plaintiffs point to deposition testimony where they

21

professed to not knowing one another before the litigation commenced.  Plaintiffs also contend that Judge Majzoub erred in sua sponte ordering Brandon Boggs, a non-party, to appear for another deposition and produce documents not requested by the City.

**Analysis**

The attorney-client privilege shields confidential communications between a lawyer and client from disclosure in discovery and at trial.  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  It encourages "free and open communications between a client and [the client's] attorney."  *United States v. Sadler*, 24 F.4th 515, 557 (6th Cir. 2022) (quoting *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 517 (6th Cir. 2014)).  "The burden of establishing the existence of a privilege rests with the person asserting it."  *Id*. at 557 (quoting *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)).  Because "the attorney-client privilege 'reduces the amount of information discoverable during the course of a lawsuit,' it is construed narrowly."  *Bauer v. Saginaw Cnty.*, No. 14-cv-11158, 2015 WL 12806498, at *3 (E.D. Mich. Feb. 23, 2015) (quoting *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005)).

The privilege extends to communications "where legal advice of any kind is sought . . . from a professional legal adviser in his [or her] capacity as such . . . unless the protection is waived."  *Sadler*, 24 F.4th at 557 (quoting *Reed*,

134 F.3d at 355-56) (alterations removed).  The privilege extends to communications that "would reveal client confidences or legal advice."  *Id.* (citation omitted).  Generally, communications are not protected "when an attorney conveys to [the] client facts acquired from other persons or sources."  *Id*. (citation omitted).

An exception to this rule is found in the common interest privilege.  "The common interest privilege is not an independent privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to third parties, and [it] assumes the existence of an underlying privilege."  *Bauer*, 2015 WL 12806498, at *4 (quoting *United States v. Suarez*, No. 5:13 CR 420, 2014 WL 1898582, at *6 (N.D. Ohio May 8, 2014)) (ellipsis and additional quotation marks omitted).  The rule "allows counsel or parties facing a common litigation to exchange privileged communications without waiving the privilege."  *Id*. (quoting *Official Comm. of Admin. Claimants v. Bricker*, No. 1:05 CV 2158, 2011 WL 1770113, at *3 (N.D. Ohio May 9, 2011)).  "For the common-interest privilege to apply, '(1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared, and (2) the statements for which protection is sought must have been designed to further that interest.'"  *Han v. InterExchange, Inc.*, No. 1:23-cv-07786,

23

2025 WL 1419527, at *2 (S.D.N.Y. May 16, 2025) (quoting *City of Almaty v. Ablyazov*, No. 15-cv-05345, 2019 WL 2865102, at *7 (S.D.N.Y. July 3, 2019)).

This Court finds support for the application of the privilege where clients of a single attorney communicate with one another. *See e.g.*, *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010) (citing *Fresenius Med. Care Holdings v. Roxane Lab'ys, Inc.*, No. 2:05-cv-0889, 2007 WL 895059, at *2 (S.D. Ohio Mar. 21, 2007)). Therefore, the privilege could apply to Plaintiffs' communications with one another. However, it applies only to communications "satisfy[ing] the requisites of the attorney-client privilege before they fall under the auspices of the common interest doctrine." *Han*, 2025 WL 1419527, at *2 (quoting *Smith v. Pergola 36 LLC*, No. 22-cv-04052, 2022 WL 17832506, at *7 (S.D.N.Y. Dec. 21, 2022)). Stated differently, "the information that is shared between parties with a common legal interest must have been 'otherwise privileged'—'for example, if an attorney provides legal advice to a client recommending that a defendant move for summary judgment[,] the client can repeat that advice to a co-defendant outside the presence of an attorney without causing the privilege to be waived.'" *Id.* (quoting *Gucci Am., Inc. v. Gucci*, No. 07-cv-06820, 2008 WL 5251989, *1 (S.D.N.Y. Dec. 15, 2008)).

Plaintiffs' generalized statement that it could withhold privileged documents was completely insufficient under the Federal Rules of Civil Procedure. The rules

24

require a party claiming a privilege to not only "expressly make the claim" but to also "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  And it was Plaintiffs' burden to show with competent evidence that a privilege applies.  Again, the privilege does not apply simply because the communications were between clients with a common interest in a matter.  The communications must otherwise be privileged.  Thus, this Court agrees with Judge Majzoub that Plaintiffs failed to show that the common interest privilege is applicable, even if it disagrees with the conclusion that the privilege is not applicable where the communications are between clients of a single attorney.

Plaintiffs' assertion that the City's requests were burdensome and overbroad also was insufficient.[4]  General boilerplate objections have "no legal effect."  *Dyno Nobel, Inc. v. Johnson*, 586 F. Supp. 3d 657, 661 (E.D. Ky. 2022) (quoting *Davis v. Am. Highwall Mining, LLC*, 570 F. Supp. 3d 491, 495 (E.D. Ky. 2020) (collecting cases)).  The Federal Rules of Civil Procedure require that a response to a document production request "state with specificity the grounds for objecting *to the request*, including the reasons" the objecting party is withholding any

---

[4] Moreover, Plaintiffs' claim that the request is burdensome is undermined by their assertion that no communications even exist.

25

responsive materials. Fed. R. Civ. P. 34(b)(2)(B). "Boilerplate or generalized objections are tantamount to no objection at all and will not be considered." *Wesley Corp. v. Zoom T.V. Prods., LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) (quoting *Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*, No. 15-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017)) (ellipsis and additional citations removed). Further, these objections do not justify Plaintiffs' refusal to answer deposition questions about their communications with one another.

Plaintiffs' general assertion that the City seeks irrelevant documents also is insufficient. "The scope of discovery under the Federal Rules of Civil Procedure is quite broad." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (citing *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)). "As the Supreme Court has instructed, because 'discovery itself is designed to help define and clarify the issue,' the limits set forth in Rule 26 must be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 904 (6th Cir. 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The City's requests for communications between Plaintiffs during the relevant time period "is reasonably calculated to lead to the discovery of admissible evidence." *Id*. (quoting *Mellon*, 424 F.2d at 501).

26

Lastly, contrary to Plaintiffs' claim, the City did introduce evidence, including credible evidence, to show the existence of written communications between the parties, which did not include their counsel.  Plaintiff Jeffrey Malone testified that he worked with Brandon Boggs and that they texted with each other, including a few times in the previous year.  Boggs testified that he also texted with Alexa.  Boggs was still a party to this lawsuit when he responded to the City's RFP, stating that he had no responsive non-privileged communications.  Moreover, the City's motion to compel was not limited to its RFP, but also sought to compel answers to the questions Plaintiffs were asked at their depositions concerning their conversations with each other.  Alexa and Rugg both acknowledged that they had spoken with one another after the lawsuit was filed.  While they may not have known each other before the lawsuit was filed, this fact does not necessarily mean that their post-trial communications are privileged.

Plaintiffs argue that requiring Alexa, Rugg, and Boggs to be re-deposed is inconsistent with Federal Rule of Civil Procedure 1, which requires the rules to "be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding."  However, there would be no need for Alexa, Rugg, or Boggs to be re-deposed if their counsel had not objected to the City's questions for *non-privileged* communications between them.

27

For all of these reasons, the Court rejects Plaintiffs' objections to Judge Majzoub's November 3, 2025 decision.

### Conclusion

For the reasons stated, the Court rejects Plaintiffs' objections to Judge Majzoub's July 21, 2025 Report (ECF No. 103), October 7, 2025 Order (ECF No. 135), and November 3, 2025 Order (ECF No. 142). Those decisions are **AFFIRMED**.

The Court has reviewed in camera the documents at issue in Judge Majzoub's September 10, 2025 Amended Order (ECF No. 128), and concludes that some documents in fact are not protected by the attorney-client or work-product privilege and should be produced by the City. Judge Majzoub's decision is otherwise **AFFIRMED**. The City shall produce the documents identified earlier within 14 days of this decision, unless they seek reconsideration of the Court's ruling. If a motion for reconsideration is filed, production is stayed until the Court rules on the motion.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 18, 2026

28